# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KYLE E. HUTSON, as Executor of the Estate of Marion S. Hutson, deceased, | : <br> : <br> :    Case No. 3:19-cv-65 <br> : <br> :    Judge Thomas M. Rose <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| UPLANDS VILLAGE, | |
| Defendant. | |

## ENTRY AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF (DOC. 8) AND DENYING, AS MOOT, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 18)

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Third Claim For Relief (Doc. 8) (the "Motion"), filed by Defendant Uplands Village ("Uplands Village") pursuant to Fed. R. Civ. P. 12(b)(6).[1] The Motion is fully briefed and ripe for review. (Docs. 8, 16, 19, 25.) In his Third Claim for Relief in the Amended Complaint (Doc. 3), Plaintiff Kyle E. Hutson, as Executor of the Estate of Marion S. Hutson, deceased ("Hutson") seeks a declaration that Uplands Village is not an eligible beneficiary under a Transfer on Death Agreement. (*Id*. at PAGEID # 55.) For the reasons discussed below, the Court **GRANTS** the Motion and dismisses the Third Claim for Relief in the Amended Complaint. This outcome moots Hutson's subsequently-filed Motion for Summary Judgment on His Third Claim for Relief (Doc. 18), and therefore that motion is **DENIED AS MOOT**. This case will proceed on Hutson's remaining claim.

---

[1] The actual title of the Motion is "Defendant's Motion to Dismiss Plaintiff's Second and Third Claims For Relief." However, after filing the Motion, Hutson voluntarily dismissed his Second Claim for Relief (while preserving paragraph 15 of his Amended Complaint). (Doc. 15.)

1

## I. BACKGROUND

### A. Allegations Concerning Claim At Issue

Hutson is the brother of the Decedent, Ms. Marion S. Hutson ("Decedent"). He was appointed the executor of her estate. Uplands Village is a retirement village located in Pleasant Hills, Tennessee.

Hutson's Amended Complaint initially contained three claims for relief, but Hutson voluntarily dismissed his Second Claim for Relief. (Docs. 3, 15.) Attached to the Amended Complaint is a transfer-on-death agreement that is at issue in the Motion (the "Transfer on Death Agreement").[2] The Third Claim for Relief—the claim at issue in the Motion—seeks a declaratory judgment, asking this Court to declare that Uplands Village is not an eligible beneficiary under the Transfer on Death Agreement that allegedly designates Uplands Village as the beneficiary of certain of the Decedent's investment accounts at Edward Jones. (Doc. 3 at PAGEID # 55.) The First Claim for Relief seeks a declaratory judgment too, asking this Court to declare that the Decedent, in December of 2014, was not of sound mind to enter into a contract and lacked the capacity to execute a beneficiary designation. (Doc. 3 at PAGEID # 53-54.)

The Transfer on Death Agreement contains a choice of law provision: "The validity and effect of this Agreement shall be governed by the law of the State of Missouri and specifically the Non-probate Transfer Law of Missouri."[3] (Doc. 17-1 at PAGEID # 198.) The Transfer on Death Agreement also contains the following language:

SECTION 2 Beneficiaries

The terms Beneficiary and Beneficiaries as used in this Agreement include Primary

---

[2] Hutson substituted the agreement originally attached the Amended Complaint with a different agreement. (*See* Doc. 17; 5/21/19 Notation Order granting "Motion to Substitute Exhibit 'A' of Plaintiff's Complaint.")
[3] The parties agree that Missouri law applies to the issues presented in the Motion. (*See* Doc. 19 (relying on the choice of law provision and citing Missouri law in support of arguments); Doc. 25 ("Defendant correctly states that validity and effect of the Transfer on Death Agreement … is controlled by the laws of the State of Missouri").)

Beneficiaries and Contingent Beneficiaries.

**Primary Beneficiaries**

Upon the Account Holder's death, the eligible assets in the Account shall be transferred to the person(s) designated by the Account Holder as Primary Beneficiaries on the Beneficiary Form according to the allocation specified.

**Contingent Beneficiaries**

In the event any designated Primary Beneficiary does not survive the Account Holder, then that Primary Beneficiary's allocated portion of the eligible assets in the Account shall pass to the corresponding Contingent Beneficiary(ies) listed on the Beneficiary Form in the proportion(s) specified in such form.

**Miscellaneous Beneficiary Information**

A Beneficiary designated on the Beneficiary Form under the terms of this Agreement must be a citizen of the United States of America or Canada, or a lawful resident of the U.S.

Account Holder must indicate a tax identification number issued by the appropriate tax authority (in the United States of America or Canada) for each Beneficiary designated on the Beneficiary Form in order for the designation to be valid, except when a tax identification number has not been issued for a Beneficiary at the time the Account Holder executes the Beneficiary Form (e.g., when a newborn child who has not yet been issued a Social Security Number is designated as a Beneficiary; or when the Account Holder's living trust is using the Account Holder's Social Security Number for income tax reporting during the lifetime of the Account Holder).

…

**Survivorship Requirement**

An individual Beneficiary designated on a Beneficiary Form under the terms of this Agreement shall not be entitled to a transfer unless the Beneficiary survives the Account Holder by 120 hours. If the Beneficiary does not survive the Account Holder by 120 hours, then he or she will be treated as if the Beneficiary did not survive the Account Holder.

….

(*Id*. at PAGEID # 196-97.)

### B. **Subject-Matter Jurisdiction**

Hutson originally filed this case in the Probate Court of Clark County, Ohio. (*See* Docs.

1, 3.) Pursuant to 28 U.S.C. § 1446, Uplands Village removed this case from the Probate Court to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (Doc. 1.) Although Hutson then filed a motion to dismiss for lack of jurisdiction, he withdrew that motion after Uplands Village filed its opposition. (Docs. 10, 13, 14.) Hutson agreed with Uplands Village's position that this Court has subject-matter jurisdiction. However, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). In fact, federal courts must "determine whether [they] have subject-matter jurisdiction over a case before proceeding at all." *In re Lee*, 880 F.3d 242, 243 (6th Cir. 2018). This Court has looked at the issue and agrees with the parties that it does have subject-matter jurisdiction over this case.

The question here concerning subject-matter jurisdiction is whether the probate exception to federal jurisdiction applies. The Supreme Court has instructed that a federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Marshall v. Marshall*, 547 U.S. 293, 298 (2006). The Sixth Circuit has interpreted the probate exception as being "narrowly limited to three circumstances": (1) if the plaintiff seeks to probate a will; (2) if the plaintiff seeks to annul a will; and (3) if the plaintiff seeks to reach the *res* over which the state court has custody. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015).[4]

---

[4] *See also Marshall*, 547 U.S. at 311-12 ("[W]hen one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.") (internal citations omitted). The Sixth Circuit also pointed out that, in *Marshall*, the Supreme Court "firmly rejected the proposition that a federal court's subject-matter jurisdiction is dependent upon state law: 'Jurisdiction is determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a state statute, even though it created the right of action.'" *Chevalier*, 803 F.3d at 801, *quoting Marshall*, 547 U.S. at 314. *See also*

4

The first two circumstances certainly do not apply here. Regarding the third circumstance, "the probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property at the time that the plaintiff files her complaint in federal court." *Chevalier*, 803 F.3d at 804. In other words, the third circumstance can only apply if the *res* is already in the custody of a state probate court at the time that the action is brought.[5] *Id.* at 801-03; *Marshall*, 547 U.S. at 311-12. Thus, if the relevant assets (here, the Edward Jones accounts) were in the custody of the probate court at that relevant time, and if the claims would require a federal court to assume *in rem* jurisdiction over those assets, then it follows that the probate exception applies to preclude federal jurisdiction.

Here, in his notice withdrawing his motion to dismiss for lack of jurisdiction, Hutson conceded that "the Clark County Probate Court has not yet exercised jurisdiction over the res (the Edward Jones accounts)." (Doc. 14.) Thus, the disputed assets were not in the Probate Court's custody at the relevant time. Also, Uplands Village points out that transfer-on-death agreements routinely are used as vehicles to transfer assets outside of probate, with the result being that such assets are non-probate assets (Doc. 13 at PAGEID # 169-70). *See also* MO. REV. STAT. §§ 461.001, 461.021; *In re Estate of Schwenker*, No. 18AP-320, 2019-Ohio-2581, 2019 Ohio App. LEXIS 2706, at *10-11 (Ohio Ct. App. 2019) (automobile owned by decedent with a transfer-on-death title was a non-probate asset); *In re Estate of Strauss*, No. 08-COA-19, 2010-Ohio-811, 2010 Ohio App. LEXIS 667, at *5 (Ohio Ct. App. 2010) ("a substantial portion of the [decedent's] assets [became] non-probate assets by virtue of being changed to payable on death accounts, transfer on

---

*Marshall*, 547 U.S. at 314 ("the jurisdiction of the federal courts, having existed from the beginning of the Federal government, cannot be impaired by subsequent state legislation creating courts of probate.") (internal quotation marks omitted).
[5] The third circumstance typically also involves a determination of whether the cause of action is *in personam* or *in rem*. *See Chevalier*, 803 F.3d at 801-04.

5

death accounts, and/or joint and survivorship accounts").

Additionally, based on the Court's reading of the Complaint as a whole (and considering that the second claim for relief has been dismissed), Hutson seeks a declaration from this Court that (a) Uplands Village is not an eligible beneficiary under the Transfer on Death Agreement; (b) Decedent, in December of 2014, was not of sound mind to enter into a contract and lacked the capacity to execute a beneficiary designation; and (c) if an Edward Jones agreement was executed by Decedent, that agreement is void *ab initio* because the Decedent lacked the capacity to contract or to designate a beneficiary. (Doc. 3.) These claims—which are declaratory judgment claims involving the application of contract law principles under state law to interpret and determine the validity of a contract—are among the types of claims that federal courts routinely entertain in cases where it has diversity jurisdiction over the parties. *See, e.g., Wiley v. Triad Hunter LLC*, No. 2:12-CV-00605, 2013 U.S. Dist. LEXIS 143058 (S.D. Ohio Sept. 27, 2013) (ruling on motions for summary judgment for a declaratory judgment regarding the interpretation and effect of a contract provision under state law, where the case was originally filed in state court and then removed to federal court on diversity jurisdiction grounds); *Bruzzese v. Chesapeake Exploration, LLC*, 998 F. Supp. 2d 663 (S.D. Ohio 2014) (finding that agreement was enforceable under state law and granting summary judgment on claim for declaratory judgment that agreement was valid and that a party had a legitimate claim to certain assets under the agreement, where the case was originally filed in state court and then removed to federal court on diversity jurisdiction grounds); *Ilyia v. El Khoury*, No. C11-1593RSL, 2011 U.S. Dist. LEXIS 144062 (W.D. Wash. Dec. 14, 2011) (denying motion to dismiss declaratory judgment action concerning party's lack of capacity to enter into contract, where diversity jurisdiction existed).

Therefore, because the probate court was not already exercising *in rem* jurisdiction over

the property at issue as of the time that the action was brought, the probate exception to federal subject-matter jurisdiction does not apply. *Chevalier*, 803 F.3d at 801-04; *Marshall*, 547 U.S. at 312 ("Furthermore, no sound policy considerations militate in favor of extending the probate exception to cover the case at hand. Trial courts, both federal and state, often address conduct of the kind … allege[d]. State probate courts possess no special proficiency … in handling such issues.") (internal citation and quotation marks omitted).[6]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this Rule "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

---

[6] *See also Libonati v. Ransom*, 664 F. Supp. 2d 519, 523 (D. Md. 2009) (probate exception did not apply where "this Court will not be asserting control of property within possession of the [probate court]. Plaintiffs dispute the validity of an intervivos transfer of non probate assets, not the administration of res under the control of the probate court."); *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 223 F. Supp. 3d 740, 746 (N.D. Ill. 2016) ("[c]ases decided since *Marshall* suggest that claims that would add assets to an estate, but do not reallocate those assets among claimants or creditors, do not disturb a state probate court's possession of property.") (emphasis in original), *citing Gustafson v. ZumBrunnen*, 546 F.3d 398 (7th Cir. 2008) and *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010).

7

relief." *Id*. (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

### III. <u>ANALYSIS</u>

As referenced above, in his Third Claim for Relief, Hutson seeks a declaration that Uplands Village is not an eligible beneficiary under the Transfer on Death Agreement. (Doc. 3 at PAGEID # 55; Doc. 16 at PAGEID # 183.) He makes the following allegations in the Amended Complaint to support his claim:

> 21. Section 2 of the Transfer on Death Agreement defines who is an eligible beneficiary. That Section requires the beneficiary be: 1) a person, and 2) a citizen of the United States of America or a lawful resident of the U.S.
>
> 22. Contractual provisions must be given their ordinary and normal meaning and without a contrary definition in the contract, a person, by definition, is not a retirement community.
>
> 23. In addition, the Transfer on Death Agreement requires under the Miscellaneous Beneficiary Information that: 'A beneficiary designation on the Beneficiary Form under the terms of this Agreement must be a citizen of the United States of America or Canada, or a lawful resident of the U.S.'
>
> 24. Upland Village is neither a citizen of the United States of America or a lawful resident.

(Doc. 3 at PAGEID # 55.) (emphasis removed.)   These allegations consist of both factual allegations and legal conclusions.  As referenced above, the Court is not bound to accept as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555-56.

A copy of the Transfer on Death Agreement is attached to the Amended Complaint.  (Doc. 17-1.)  As also referenced above, the Court may consider exhibits attached to the complaint in evaluating a motion to dismiss.  *Luis*, 833 F.3d at 626.  "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536-37 (6th Cir. 2017) (concluding that contradictions between allegations in complaint and terms of agreement attached to complaint foreclosed plaintiff's claim).  "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, a court is not bound to accept as true the plaintiff's factual allegation."  *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019).

### A. **Principles for Contract Interpretation**

As explained above, Missouri law applies to the issues presented in the Motion.  "The construction and interpretation of a contract is a matter of law."  *Sligo, Inc. v. Nevois*, 84 F.3d 1014, 1019 (8th Cir. 1996) (applying Missouri law).  The Missouri Supreme Court has explained that "[t]he cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent."  *Dunn Indus. Grp., Inc. v. City of Sugar Creek, Missouri*, 112 S.W.3d 421, 428 (Mo. 2003).  "The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning."  *Id.*; *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club of Columbia, Missouri*, 491 S.W.2d 261, 264 (Mo. 1973) ("Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it.  Even seeming contradictions must be harmonized away if that be reasonably possible.").  "Additionally, each term of a contract is construed to avoid

rendering other terms meaningless." *Dunn Indus. Grp.*, 112 S.W.3d at 428. "Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone." *Id*. at 428-29.

### B. Terms of the Transfer on Death Agreement

Neither party argues that the Transfer on Death Agreement is ambiguous. And, although the parties disagree over the meaning of certain terms in the agreement, disagreeing over the meaning of a term does not make the contract ambiguous as a matter of law. *Dunn Indus. Grp.*, 112 S.W.3d at 428 ("A contract is not ambiguous merely because the parties disagree as to its construction.").

By its plain terms, the Transfer on Death Agreement requires that a "Beneficiary" be (1) a "person," and (2) either "a citizen of the United States of America … or a lawful resident of the U.S." (Doc. 17-1 at PAGEID # 196.) Hutson argues that this means a Beneficiary must be a natural person, i.e., a human being. (*See, e.g.* Doc. 25 at PAGEID # 300.) Uplands Village argues that an entity (non-natural person) can be a beneficiary so long as it meets those two requirements, and that the Amended Complaint concedes that Uplands Village meets those requirements. (*See, e.g.* Doc. 19 at PAGEID # 225.) Although Hutson alleges in the Amended Complaint that "Uplands Village is neither a citizen of the United States of America or a lawful resident," that is a legal conclusion that this Court need not accept as true. The terms "person," "citizen," and "lawful resident" are not defined in the Transfer on Death Agreement. However, this Court is able to ascertain the intention of the parties in using those terms by reading the agreement as a whole and applying other principles of construction referenced above.

### C. Application of the Requirements to be a "Beneficiary" Under the Transfer on Death Agreement

Regarding the first requirement, when read as a whole, the Transfer on Death Agreement

demonstrates that the term "person" is not limited to a natural person (i.e., a human being) for purposes of the agreement. First, the agreement's language shows that a living trust can be a "Beneficiary" under the agreement.[7] (Doc. 17-1 at PAGEID #196.) A living trust is not a natural person. *See In re Mid-America Living Trust Assocs.*, 927 S.W.2d 855, 859-60 (Mo. 1996). Second, the Agreement references providing a Beneficiary's "tax identification number" or "Social Security Number." (Doc. 17-1 at PAGEID # 196.) It follows that, if the Agreement only allowed natural persons to be named as Beneficiaries, then the Agreement would only have needed to reference a social security number, not the broader "tax identification number" category that applies to non-natural persons. Third, the Agreement includes a reference to an "individual Beneficiary" in the "Survivorship Requirement," and thus distinguishes an "individual Beneficiary" from a broader class of "Beneficiaries." It follows that, if a Beneficiary under the Agreement was only supposed to include natural persons, then the Agreement would not have added the word "individual" before the word "Beneficiary" in that provision and it could have simply required that all "Beneficiaries" survive the Account Holder by 120 hours.[8]

Thus, the plain language of the Agreement indicates that Uplands Village can qualify as a "person" under the Transfer on Death Agreement. *Dunn Indus. Grp.*, 112 S.W.3d at 428. Independent and additional support for this conclusion is found in Missouri's Nonprobate Transfers Law. A relevant Missouri statute defines "beneficiary" as "a person or persons designated or entitled to receive property pursuant to a nonprobate transfer on surviving one or more persons." MO. REV. STAT. § 461.005(1). The statue defines "person" as "living individuals, entities capable of owning property and fiduciaries." MO. REV. STAT. § 461.005(10). Therefore,

---

[7] Hutson concedes that the Transfer on Death Agreement includes an "example of an 'Account Holder's living trust' as an eligible beneficiary." (Doc. 25 at PAGEID # 302.)

[8] Again, Hutson concedes that a "living trust would obviously not require survivorship compared to an individual beneficiary." (Doc. 25 at PAGEID # 302.)

Missouri's Nonprobate Transfers Law also supports that Uplands Village can qualify as a "person" under the Transfer on Death Agreement.[9]

Regarding the second requirement, given the preceding analysis that demonstrates a non-natural person can be a Beneficiary under the Transfer on Death Agreement, the citizenship/residency requirement logically relates to a geographic limitation.[10] *See Roth v. Continental Wire Co.*, 68 S.W. 594, 94 Mo. App. 236, 264-65 (Mo. Ct. App. 1902) (upholding interpretation of contract where it was logical from constructing the contract as a whole). The Amended Complaint alleges that "Uplands Village is a retirement village located in Pleasant Hills, Tennessee," a location within the United States. (Doc. 3 at PAGEID # 52.) The Court accepts this as true. The Amended Complaint does not allege that Uplands Village is from a geographic location outside of the United States, or otherwise allege that Uplands Village is a citizen or resident from a country besides the United States. *Accord: State ex rel. Smith v. Gray*, 979 S.W.2d 190, 195 (Mo. 1998) ("a corporation resides in a county where it has an office or agent for transaction of usual and customary business."); *Missouri United Methodist Ret. Homes v. State Tax Comm'n of Missouri*, 522 S.W.2d 745, 751-52 (Mo. 1975) (retirement home was a not-for-profit corporation, organized and existing in the State of Missouri).

Therefore, the Transfer on Death Agreement does not preclude Uplands Village from being an eligible "Beneficiary." The language of the Transfer on Death Agreement, coupled with

---

[9] *See also Heiden v. Gen. Motors Corp.*, 567 S.W.2d 401, 403 (Mo. 1978) ("statutes in force at the time and place of making a contract which affect its validity, performance, discharge, or enforcement, enter into and form a part of it as if they were expressly referred to or incorporated within the terms of the contract").

[10] Hutson argues that "[i]f the contract simply wanted to allow a 'person' to be a beneficiary there would have been no reason to add the requirement that the person must also be a 'citizen of the United States of America or Canada' or 'a lawful resident of the U.S.' Defendant's interpretation of the TOD Agreement makes the citizenship or residency requirement superfluous." (Doc. 25 at PAGEID #298.) The Court disagrees. Such a requirement is not superfluous because it provides an additional, <u>geographic</u> limitation on a permissible "Beneficiary" under the Transfer on Death Agreement. For example, generally speaking, a French human being or French retirement home would not meet the second requirement, but both could meet the first requirement. There certainly are business and legal reasons to include a geographic limitation on who can qualify as a party or beneficiary under a contract.

allegations in the Amended Complaint, preclude, as a matter of law, the declaratory relief Hutson seeks in the Third Claim for Relief. *See Mich. Millers Mut. Ins. Co. v. Travelers Indem. Co.*, No. 16-11767, 2016 U.S. Dist. LEXIS 168151, at *1, 12-17 (E.D. Mich. Dec. 6, 2016) (granting motion to dismiss declaratory judgment claim in case removed from state court because, after considering public records that contradicted allegations in complaint, the complaint did not state a plausible claim for the declaratory judgment sought by plaintiff). Under the plausibility standard under Rule 12(b)(6), the Third Claim for Relief in the Amended Complaint fails to state a claim. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 678-79.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Third Claim For Relief (Doc. 8). Plaintiff's Third Claim for Relief in his Amended Complaint is dismissed. This outcome moots Hutson's subsequently-filed Motion for Summary Judgment on His Third Claim for Relief (Doc. 18), and therefore that motion is **DENIED AS MOOT**. This case will proceed on Plaintiff's remaining claims.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 7, 2019.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE